UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Frederick K. Jackson, | Case No. 16-cv-01406-DSD-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michelle Smith, David Reishus, and Mike Costello, | |
| Defendants. | |

Fredrick K. Jackson, OID #217535, MCF-Oak Park Heights, 5329 Osgood Ave N, Stillwater, MN 55082, plaintiff, *pro se*

Caitlin M. Micko and Rachel E. Bell, Office of the Minnesota Attorney General, 445 Minnesota Street, Suite 900, Saint Paul, MN 55101, counsel for the defendants

This case involves prison disciplinary decisions allegedly made by the Defendants in violation of the constitutional rights of the Plaintiff, Frederic K. Jackson. This matter is before the Court on the Defendants' motion for summary judgment. [ECF No. 33.] For the reasons that follow, the Court recommends that the Defendants' motion be granted and this case be dismissed.

**I.   Background**

During the relevant time period, Mr. Jackson was in the Minnesota Correctional Facility at Oak Park Heights. Generally speaking, Mr. Jackson's Amended Complaint describes two main concerns. First, he asserts that he was disciplined for being involved in a conspiracy to smuggle cocaine into the prison, but was not provided sufficient procedural protections during the disciplinary process. As a sanction, Mr. Jackson was transferred to the Administrative Control Unit ("ACU") within Oak Park Heights, where he asserts that the living conditions are worse than in

1

the prison's general population. Given the conditions in the ACU, Mr. Jackson claims that he was constitutionally entitled to a more substantial hearing under the Due Process Clause of the Fourteenth Amendment.

Second, Mr. Jackson asserts that the correctional officer responsible for finding him guilty of the smuggling conspiracy, Defendant Mike Costello, destroyed his property, including legal materials, in retaliation for Mr. Jackson's appeal of the disciplinary charges. This destruction of property and legal materials allegedly prevented Mr. Jackson from litigating issues related to the criminal conviction that led to his confinement in the prison. Mr. Jackson claims that these events deprived him of his constitutional right of access to the courts under the First Amendment and the Fourteenth Amendment.

Mr. Jackson seeks declaratory and injunctive relief as well as damages against Mr. Costello. [*See* Am. Compl. at 28-29, ECF No. 30.]

### The Smuggling Conspiracy and Disciplinary Charges

Mr. Jackson explains that in early August of 2015, another inmate named Prentis Jackson ("Prentis") was meeting with his girlfriend and child and was observed removing a package of cocaine from the child's pants pocket. [Am. Compl. at 4, ¶ A.] Prentis did this on two separate occasions, but was caught on August 9th. [*Id.*] An investigator then reviewed the prison calls of Prentis, Cornelius Jackson ("Cornelius"), Lamante Martin, and Mr. Jackson. [*Id.* at 4-5 ¶ B.] The investigator found a call Mr. Jackson made "to someone he referred to as his uncle and told him that Cornelius Jackson's mom is going to drop off some money and to get her together and tell her you have that book for her." [*Id.* at 5 ¶ C.] Cornelius meanwhile called his mom and asked her if she had received a book and told her that it had to have a "soft cover" due to prison rules. [*Id.* at 5 ¶ D.] Mr. Jackson asserts that because Cornelius referenced a "soft" covered book, and soft is a slang term for powder cocaine, Mr. Jackson was "charged with conspiracy along with Martin." [*Id.*]

2

On August 10, 2015, Mr. Jackson was placed in administrative segregation, a more restrictive environment within the prison. [Am. Compl. ¶ 3.] On August 13, 2015, the Defendant Mike Costello served Mr. Jackson with disciplinary charges asserting "that he conspired to smuggle cocaine into the facility to possess illegal narcotics." [*Id.* ¶ 4.] Mr. Jackson rejected Mr. Costello's offer of "a deal of 180 days in seg" and stated that he would be calling witnesses. [*Id.* ¶ 6-7.] He also informed Mr. Costello that the witnesses he wanted to call were Prentis, Cornelius, and Mr. Martin and that he wanted to present evidence of test results showing that Mr. Jackson had a clean urinary analysis on August 14, 2015. [*Id.* ¶ 10.] However, Mr. Costello told Mr. Jackson that he would not be able to call any witnesses because the procedure would involve only "a minor hearing." [*Id.* ¶ 8.] Mr. Jackson alleges that Mr. Costello was manipulating the disciplinary process by treating a major rule violation as a minor one in order to deny Mr. Jackson the opportunity to call witnesses. [*Id.* ¶¶ 11, 13.]

Mr. Jackson objected and wrote a kite to the Oak Park Heights Warden, Defendant Michelle Smith. [Am. Compl. ¶ 9.] He also wrote to "Captain Ayers" explaining that he believed Mr. Costello had improperly treated the disciplinary issue as an infraction warranting a minor hearing rather than a major one, which would have entailed more procedural protections. [*Id.* ¶¶ 12-13.] Despite Mr. Jackson's objection Mr. Costello conducted a minor hearing on August 19, 2015, at which Mr. Jackson was found to have violated prison rules even though Cornelius told Mr. Costello that Mr. Jackson played no part in the smuggling. [*Id.* ¶¶ 15-17.] Mr. Jackson received a punishment of 240 days in the ACU. [*Id.* ¶ 17.] After his intermediate efforts to appeal Mr. Costello's decision, Defendant David Reishus denied an appeal on September 8, 2015, but reduced his sentence from 240 to 200 days, with the 40 days suspended for six months provided that Mr. Jackson received no same or similar charges. [Am. Compl. ¶¶ 18-20.]

To show that he should have received a major hearing, Mr. Jackson includes a number of allegations concerning the living conditions in the ACU. Mr. Jackson also

3

alleges that the ACU has only one television channel, and on it, he and other African American inmates viewed a movie called "Amazing Grace," which depicted degrading and inhuman treatment that people of color experienced during the slave trade. [*Id.* ¶¶ 39-40.] For the inmates in ACU, recreation time was regularly canceled due to staffing shortages, and inmates frequently spent 24 straight hours locked in their cells. [*See id.* ¶¶ 62, 65.] Inmates are not able to interact with one another while in the ACU because of the design of the doors. [*Id.* ¶ 64.]

Mr. Jackson further alleges that: (1) the cells in ACU are extremely cold; (2) inmates are subjected to strip searches under unsanitary conditions; (3) the showers are cold and inmates are permitted only five minutes to bathe; (4) rooms were cleaned with dirty mop water; (5) cells are infested with insects; (6) inmates must meet with visitors behind glass using an intercom or by video; (7) no human contact is permitted; (8) lights are kept on 24 hours a day; (9) inmates are not allowed to visit the law library; (10) inmates are provided inadequate nutrition; (11) severely mentally ill inmates are housed in ACU along with inmates who are "temporarily sane"; and (12) there is a failure of prison officials to "do required security rounds."[Am. Compl ¶¶ 80-103.]

While he was in the ACU, several other inmates attempted suicide, one smeared feces on the walls in a room neighboring Mr. Jackson's, and others screamed obscenities and nonsensical statements for hours. [*Id.* ¶¶ 41-45, 49, 51-52.] Mr. Jackson himself contemplated suicide on several occasions while in ACU. [*Id.* ¶¶ 47, 111.] He experienced hallucinations and became paranoid. [*Id.* ¶ 111, 116.] His paranoia leads him to think about harming others before they harm him, which resulted in a fight with another inmate in the ACU. [*Id.* ¶ 116.] Since his incarceration in the ACU, Mr. Jackson alleges that he has a hard time communicating and has experienced memory loss. [*Id.* ¶ 117.]

In September 2016, changes were made to the segregation policy at Oak Park Heights. [Am. Compl. ¶¶ 119-24.] "[I]n response to increasing concerns about the

4

harmful effects of extended segregation placements . . . a 90 [day] cap was placed on segregation sentence[s]." [*Id.* ¶¶ 119, 121.]

### Retaliation and Access to Courts

Because he appealed Mr. Costello's determinations that he would only receive a minor hearing and that he violated prison rules, Mr. Jackson alleges that Costello retaliated against him. Mr. Costello allegedly "destroyed [Mr. Jackson's] legal work, legal notes, attorney letters, law books and television." [Am. Compl. ¶ 128.] When Mr. Jackson lodged a claim relating to his property, Mr. Costello recommended that Mr. Jackson's property claim be denied "to cover up [Costello's] misconduct." [*Id.* ¶ 129.] When the "subcommittee made [Mr. Jackson] an offer for the reimbursement of the destruction of his property, legal paper, T.V. and everything he wrote down in his claims[, Mr. Costello] was visibly upset." He told Mr. Jackson that if he had just accepted the punishment initially offered for the smuggling charges, his property would not have been destroyed. [*Id.* ¶ 130.] Eventually, Mr. Jackson was reimbursed for his property. [*Id.* ¶ 132.]

Despite being reimbursed, Mr. Jackson states that because his legal materials were destroyed he has been prevented from challenging his conviction. [Am. Compl. ¶ 135.] In particular, he lost "newly discovered evidence" as a result of Mr. Costello's destruction of his property. Among the items he allegedly lost were the following: (1) notes of a recorded conversation with the owner of a firearm allegedly used by Mr. Jackson during the commission of a robbery; (2) notes of a recorded conversation with an individual named Tameka Bell, in which she states that a detective threatened to prosecute her if she testified on Mr. Jackson's behalf at an evidentiary hearing; (3) transcripts of a phone call with a prosecution witness who provided exculpatory information indicating that Mr. Jackson was not involved in a murder; and (4) cell phone records from 15 years ago that would show that Mr. Jackson was not at the scene of the crime for which he was convicted. [*Id.* ¶ 136.] Mr. Jackson asserts that destruction of this evidence prevented him from supporting a habeas corpus or post-conviction petition. [*Id.* ¶ 143.] Similarly, Mr. Costello's destruction of several books

and other legal resources allegedly prevented Mr. Jackson from litigating an appeal in October 2015. [*Id.* ¶¶ 137-40.] Mr. Jackson asserts that these actions violated his First Amendment and Fourteenth Amendment right of access to the courts. [*See id.* ¶ 175.]

**Procedural History**

On August 1, 2017, the Defendants filed their motion for summary judgment, a supporting memorandum, and several affidavits and exhibits in support of the motion. [ECF Nos. 33-37.] Generally speaking, the Defendants' evidence shows: (1) the procedures applicable to disciplinary hearings when inmates are charged with violating prison rules at Oak Park Heights; (2) the disciplinary sanctions applicable if an inmate is found to have violated those rules, including loss of certain privileges and assignment to the ACU or another segregation unit known as Complex 5; and (3) the policies applicable to inmates' property at Oak Park Heights and the procedures an inmate can use if his property is lost or damaged by an employee of the Minnesota Department of Corrections. [*See* Aff. of David Reishus, *passim*, ECF No. 35.] The Defendants have also shown: (1) the events leading to the charges against Mr. Jackson for the smuggling conspiracy; (2) the reasons Mr. Costello provided a minor hearing instead of a major one; (3) that Mr. Costello provided a written decision with his findings that Mr. Jackson violated prison rules; (4) the reasons Defendant Reishus upheld Costello's decision when Mr. Jackson appealed; (5) the disciplinary sanctions imposed; and (6) the events surrounding Mr. Jackson's property claim. [*See id.*; Aff. of Michael Costello, *passim*, ECF No. 36.]

Based on the evidence submitted and Mr. Jackson's allegations, the Defendants argue they are entitled to summary judgment on all of Mr. Jackson's claims. First, Defendants argue that Mr. Jackson cannot sue them in their official capacities, nor can he recover damages from them in such capacity pursuant to the Eleventh Amendment. [Defs.' Mem. at 18-19.] Second, they argue that Mr. Jackson cannot establish a violation of his due process rights as a result of the disciplinary proceedings concerning the cocaine smuggling conspiracy. Defendants also argue that he has failed to support his claims that the conditions of his confinement deprived

him of a liberty interest. Moreover, Defendants contend that they are entitled to qualified immunity on any due process claim asserted in the Amended Complaint. [Defs.' Mem. at 19-23.] Third, Defendants assert that Mr. Jackson cannot establish a violation of his constitutional right to access the courts because the undisputed facts show that he suffered no injury. [Defs.' Mem. at 23-26.] Fourth, Defendants argue that the undisputed facts entitle them to judgment as a matter of law on Mr. Jackson's alleged retaliation claim. [Defs.' Mem. at 26-27.] Finally, Defendants assert that Mr. Jackson executed a full and final release of any and all claims or causes of action relating to the loss of his property, which precludes recovery on his access to courts and retaliation claims. [Defs.' Mem. at 27-28.]

Pursuant to the Scheduling Order, Mr. Jackson was required to respond to the Defendants' summary-judgment motion on August 22, 2017. [Scheduling Order, ECF No. 21.] Mr. Jackson failed to do so, and the Court issued an Order requiring Mr. Jackson to show cause why the Court should not deem the motion fully briefed and take the matter under advisement based on the Defendants' submissions alone. [*See* Order to Show Cause, ECF No. 40.] Mr. Jackson did not respond to the Order to Show Cause. Nor has he filed any response to the Defendants' motion for summary judgment.

## II. Discussion

Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322. When the moving party properly supports a motion for summary judgment, the nonmoving party must present admissible evidence showing that specific facts exist creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wingate Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008). When considering Mr. Thomas's motion, the Court views the record in the

light most favorable to the defendants, and when considering the defendants' motion, the court must view the record in the light most favorable to Mr. Thomas. *Durand v. Fairview Health Servs.*, __ F. Supp. 3d __, 2017 WL 217649, at *4 (D. Minn. Jan. 18, 2017).

Based on the undisputed facts in the record, the Court concludes that the Defendants are entitled to judgment as a matter of law on all of Mr. Jackson's claims. The Defendants have adequately supported their motion for summary judgment and Mr. Jackson's failure to respond to the motion and the Court's Order to Show Cause means that he has not presented admissible evidence showing that a trial is necessary to resolve any disputed facts.

### A. Due Process Claim and Conditions in the ACU

Mr. Jackson presents a procedural due process claim through his allegations that he should have received a major hearing and been permitted to call witnesses as a result of the charges that he violated prison rules prohibiting smuggling of drugs. Defendants seek summary judgment on this claim because Mr. Jackson cannot show that he has a protected liberty interest or that he received inadequate procedural protections prior to the decision to put him in segregation. In addition, Defendants contend that they are entitled to qualified immunity on this claim. Because the Court agrees that Mr. Jackson has not shown that a protected liberty interest was affected by the decision to place him in the ACU for 200 days, the Defendants are entitled to summary judgment on his procedural due process claim. Therefore, the Court does not reach the other arguments raised in the Defendants' motion for summary judgment.

#### *Liberty Interest*

To prove a violation of the procedural rights guaranteed under the Fourteenth Amendment's Due Process Clause, a plaintiff must show that a state actor's conduct implicated a recognized liberty or property interest. *See Johnson v. City of Minneapolis*, 152 F.3d 859, 861 (8th Cir. 1998). To show deprivation of a liberty interest in the

8

prison context, a plaintiff, like Mr. Jackson, must show that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*." *Portley-El v. Brill*, 288 F.3d 1063, 065 (8th Cir. 2002). However, something particularly unusual or significant about the nature of administrative or disciplinary segregated confinement can give rise to a protected liberty interest in a given case. *See Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996).

Here, Mr. Jackson was given a disciplinary sentence of 200 days in the ACU. "The length of time of a prisoner's segregation is a significant factor in the determination of whether the confinement is an 'atypical and significant hardship.'" *Herron v. Wright*, 116 F.3d 480 (8th Cir. 1997) (per curiam) (Table decision) (noting that lengthy period in the most restrictive unit in a prison was "beyond typical and insignificant"). However, the Eighth Circuit has held that an even longer period of segregated confinement does not, on its own, indicate an atypical and significant hardship in relation to the ordinary incidents of prison life. *See, e.g.*, *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) (concluding that the plaintiff was not deprived of a liberty interest by confinement in administrative segregation for nine months). Accordingly, the Court concludes that the length of Mr. Jackson's confinement alone does not give rise to a protected liberty interest.

Nor has Mr. Jackson sufficiently demonstrated, for purposes of summary judgment, that the conditions of his confinement in the ACU during his disciplinary sentence were an atypical and significant departure from ordinary prison life. Whether prison discipline imposes such a hardship on an inmate in relation to the ordinary incidents of prison life "is a question of fact." *See Portley-El*, 288 F.3d at 1065. Mr. Jackson describes a number of troubling conditions of his confinement during his time in the ACU in his Amended Complaint. However, his obligation at the summary judgment stage is to provide admissible evidence that would allow a reasonable jury to

9

resolve a question of fact about what occurred in his favor. Unfortunately, Mr. Jackson has come forward with no admissible evidence to substantiate the allegations in his pleadings about the conditions in the ACU. As a result, there is no genuine factual dispute for a jury to resolve in this case concerning the issue of atypical and significant hardship.

Because the length of Mr. Jackson's disciplinary sentence alone is insufficient in this case to show an atypical and significant hardship and he has come forward with no evidence to support his allegation about the conditions of his confinement in the ACU, he cannot show that he has a protected liberty interest. Accordingly, the Defendants are entitled to judgment as a matter of law on his procedural due process claim.

### B. Access to Courts and Retaliation Claim

In his Amended Complaint, Mr. Jackson claims that the Defendants violated his right of access to the courts under the First and Fourteenth Amendments to the United States Constitution based on the destruction of legal materials in his cell. He also claims that Mr. Costello destroyed those legal materials in retaliation for his appeal of the disciplinary decisions discussed above. Defendants seek summary judgment on both of these claims. Because the Defendants have shown that, based on the uncontroverted factual record, no reasonable juror could find that Mr. Jackson suffered an actual injury as a result of the alleged destruction of his legal materials, nor that the destruction of those items was intended to prevent him from litigating any case, they are entitled to judgment as a matter of law on his access-to-courts claim. And because Mr. Jackson has presented no evidence to support his allegations that his appeal motivated the destruction of his property, the Defendants are entitled to summary judgment on his retaliation claim as well. Accordingly, the Court does not address Defendants' alternative arguments in support of their requests for summary judgment on these claims.

### *Undisputed Facts*

The Defendants provided the following undisputed evidence concerning these claims. On August 24, 2015, two weeks after Mr. Jackson was transferred to the ACU, Oak Park Heights staff notified Mr. Jackson that he had more property (a paper bag full of letters) than was permitted by prison rules and that the property would be disposed of if he did not respond within 30 days. [Costello Aff. ¶¶ 34-35.] Mr. Jackson did not respond, and the bag of letters was destroyed. [*Id.* ¶ 35.] Mr. Jackson received a similar notice regarding additional property (a bin full of canteen items, plastic bowls, and pitchers) that exceeded the allowed limit a week later on August 31, 2015, and again he did not respond. [*Id.* ¶ 36.] This property was destroyed as well. [*Id.* ¶ 37.]

Mr. Jackson filed a property loss claim on October 5, 2015 asserting that the destruction of his property had resulted in the loss of legal materials and a television. [Costello Aff. ¶¶ 37-38.] When Mr. Costello and other staff looked into the issue, they could not locate Mr. Jackson's legal materials. [*Id.* ¶ 38.] Because Mr. Jackson had not responded to the notices that his property would be disposed of, Mr. Costello recommended that the property claim be denied, but he later changed his mind and recommended that Mr. Jackson be reimbursed for the property. [*Id.* ¶¶ 39-40.] Mr. Costello also acknowledges that he is uncertain whether the specific property that Mr. Jackson addressed in his claim was destroyed based on the prison's applicable procedures or if it was accidentally lost when he was transferred from general population to the ACU, which sometimes occurs. [*Id.* ¶ 41.]

On August 31, 2015, the Minnesota Court of Appeals upheld a district court's denial of his post-conviction petition in which he challenged a June 2005 conviction for first-degree murder. [Aff. of Caitlin Mick, Ex. A, ECF No. 37.] The district court had denied his post-conviction petition based on the discovery that alleged witness recantations he submitted were not genuine and that Mr. Jackson had abused the legal

11

process by arranging to have several individuals provide false affidavits.[1] [*Id.*, Ex. A at 3-5.] Mr. Jackson sought and obtained an extension of time to petition the Minnesota Supreme Court for review. [*Id.*, Exs. B & C.] And on October 14, 2015, Mr. Jackson filed a petition for further review, which was ultimately denied by the Minnesota Supreme Court on December 15, 2015. [*Id.*, Exs. D & E.]

### *Access to Courts*

The specific constitutional provision that gives rise to an access-to-courts claim is a matter of some confusion. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) ("Decisions of this Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, . . . the First Amendment Petition Clause, . . . the Fifth Amendment Due Process Clause, . . . and the Fourteenth Amendment Equal Protection . . . and Due Process Clauses."); *see also Earl v. Fabian*, 556 F.3d 717, 726 (8th Cir. 2009) ("Access to the courts is a constitutional right whose basis is unsettled."). Nevertheless, regardless of the source, it is "established beyond doubt that prisoners have a constitutional right of access to the courts," that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977).

For a prisoner to prevail on an access-to-courts claim, he must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

> To [show actual injury], the prisoner is required to demonstrate that, as a result of the conduct of prison staff, the prisoner was denied the opportunity to prosecute a claim. . . . It is insufficient to show that this conduct made litigation inconvenient. Instead the prisoner must show

---

[1] The claims Mr. Jackson raised and the witnesses who he asserted had recanted their testimony do not appear to be related to the "newly discovered evidence" he identified in his Amended Complaint. [*Compare* Micko Aff., Ex. A (Minnesota Court of Appeals decision discussing alleged recantation of witnesses D.S., R.L, and S.A.-A.), *with* Am. Compl. ¶ 136 (discussing conversations and recordings with other individuals, cell phone records, and police reports with allegedly undisclosed impeachment material concerning one of the State's witnesses).]

12

> that this conduct actually prevented the prisoner from litigating the claim.

*Beck v. Pawlenty*, No. 04-cv-686 (MJD/JJG), 2006 WL 2506993 at *5 (D. Minn. Aug. 29, 2006) (citing *Cody v. Weber*, 256 F.3d 764, 767-68 (8th Cir. 2001), and *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)); *see also McKenzie v. Fabian*, No. 07-cv-4441 (PAM/JSM), 2009 WL 2982641, at *6 (D. Minn. Sept. 11, 2009) (requiring a showing of actual injury regardless of the constitutional provision at issue). To show an actual injury, the prisoner must show that an underlying "'nonfrivolous legal claim had been frustrated or was being impeded.'" *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) (quoting *White v. Kautzy*, 494 F.3d 677, 680 (8th Cir. 2007)); *see also Bandy-Bey v. Crist*, 578 F.3d 763, 765 (8th Cir. 2009) (explaining that the legal claim must be nonfrivolous and arguably meritorious).

Based on the undisputed facts in the record, no reasonable juror could find that Mr. Jackson suffered an actual injury. At the time when the issue with his property arose in early August and was ultimately disposed of in September or October 2015, Mr. Jackson was able to litigate his pending appeal in the Minnesota courts. Indeed, during this time period he filed a motion seeking an extension, which was granted, and then filed a lengthy petition for review to the Minnesota Supreme Court. He asserts in his Amended Complaint that the destruction of his legal materials prevented him from citing certain cases, understanding the applicable rules, and formulating his arguments, but an access-to-courts claim requires a showing that the Defendants conduct did more than create inconvenience. He was not *prevented* from litigating this appeal.

Although Mr. Jackson makes reference to a habeas corpus proceeding in his Amended Complaint, he has not come forward with any evidence to support a claim based on interference with such a proceeding. For example, he has not put forth any affidavit testimony or other evidence to support the notion that he had a pending habeas corpus proceeding that depended upon the submission of the alleged newly discovered evidence he identifies in his pleading. Nor did he come forward with any

admissible evidence showing that he was preparing to file a non-frivolous habeas corpus claim based on such information, but was actually prevented from doing so as a result of the destruction of his legal materials.

Moreover, case law indicates that for a plaintiff to prevail on an access-to-courts claim, he must show that the defendant intended to prevent that access. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830-31 (8th Cir. 2005) (finding that the plaintiffs needed to "show that the defendants acted with some intentional motivation to restrict their access to the courts"); *McKenzie v. Fabian*, No. 07-cv-4441 (PAM/JSM), 2009 WL 2982641, at *8 (D. Minn. Sept. 11, 2009) (stating that "plaintiff must be able to prove that defendants *intentionally restricted* his access to the courts and that it was the[ir] actions that actually prevented him from litigating his claim with the Minnesota Court of Appeals") (emphasis added). Here, the undisputed facts would not allow a reasonable juror to find that any of the Defendants acted with such intent. Rather, the record shows that the destruction of Mr. Jackson's property followed his failure to respond to notices that he was over the property limit or (at most) that his legal materials may have been inadvertently lost when he was transferred to the ACU.

For these reasons, the Court concludes that the Defendants are entitled to summary judgment on Mr. Jackson's access-to-courts claim.

### Retaliation

Mr. Jackson's retaliation claim is premised on the allegation that Mr. Costello destroyed his property, including his legal materials and television, because Mr. Jackson appealed the disciplinary decision. For Mr. Jackson to prove his retaliation claim, he must show: "(1) he engaged in a protected activity, (2) [Costello] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)).

Defendants argue that they are entitled to summary judgment because there is no evidence in the record from which a reasonable juror could conclude that the destruction of Mr. Jackson's property was motivated by Mr. Jackson's appeal. [Defs.' Mem. at 27-28.] The Court agrees. As is true of his other claims, Mr. Jackson has offered no evidence in support of this claim, and there is no evidence showing a causal connection between his appeal and the destruction of his property. His allegations in the Amended Complaint are insufficient to prevent summary judgment. And based on the record before the Court a reasonable juror could only conclude that Mr. Jackson's property was destroyed because he failed to respond to the two notices he received indicating that he had property in excess of the limitations established by prison rules.

### *Conclusion*

For the foregoing reasons, the Court concludes that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Mr. Jackson's access-to-courts and retaliation claims.

### Recommendation

Based on the foregoing, the Court makes the following recommendation:

1. Defendants' motion for summary judgment [ECF No. 33] should be **GRANTED**.

2. This action should be **DISMISSED WITH PREJUDICE**.

Date: January 8, 2018         *s/ Katherine Menendez*
                              Katherine Menendez
                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.